UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FRANKLIN M. I. I.,** | Civil Action No. 20-4617 (SDW) |
| **Petitioner,** | |
| v. | **OPINION** |
| **JOHN TSOUKARIS, et al.** | |
| **Respondents.** | |

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Franklin M. I. I., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 3). Following an order to answer, the Government filed responses to the petition and motion (ECF No. 6-7, 16, 18), to which Petitioner has replied. (ECF No. 9-11, 19). Petitioner also filed an unopposed motion seeking to seal his medical records. (ECF No. 15). For the following reasons, this Court will grant the motion to seal, deny the petition without prejudice and deny the motion seeking a temporary restraining order as moot in light of the denial of Petitioner's habeas petition.

I. BACKGROUND

Petitioner is a twenty-seven year old citizen of Ecuador who entered the country illegally without inspection or admission in September 2019. (ECF No. 1 at 5, Document 7 attached to ECF No. 6 at 2). On September 18, 2019, Petitioner was detained by immigration officials, served with a notice to appear for removal proceedings in Texas, and released on his own recognizance. (Document 7 attached to ECF No. 6 at 2-6). Because of a defect in that notice to appear, however, Petitioner's initial removal proceedings were terminated by an immigration judge. (ECF no. 6 at

1

4-5 n. 4). Petitioner thereafter moved to New Jersey. On January 12, 2020, Petitioner was arrested on simple assault charges based on his allegedly having "kick[ed] the victim in the face while she was laying in bed" during a domestic dispute. (Documents 7-8 attached to ECF No. 6). That charge is apparently still pending in municipal court. (ECF No. 6 at 6). While Petitioner was detained in the Essex County Correctional Facility on that charge, immigration officials placed a detainer request against him, served him with a warrant and notice to appear, and on January 15, 2020, shifted Petitioner into immigration detention at the Essex County Correctional Facility pursuant to the Government's discretionary authority under 8 U.S.C. § 1226(a) based on Petitioner's illegal entry into the United States. (*Id.*). On April 17, 2020, Petitioner appeared for a bond hearing before an immigration judge, but was denied release on bond as the judge concluded he was both a danger and a flight risk. (*Id.*). Petitioner has remained in immigration detention since January 2020 and remains detained without having received a final removal order at this time.

While in the Essex County facility, Petitioner has been seen by medical staff on multiple occasions. Upon being taken into the facility in January 2020, Petitioner was given an intake screening by a nurse during which he denied any serious medical issues other than anxiety. (ECF No. 20 at 6-10). Petitioner was prescribed Vistaril for this anxiety. (*Id.* at 10). Petitioner also received a TB test, which was negative. (*Id.* at 11-12). Upon being transferred to immigration detention on January 15, Petitioner was given a second intake screening, during which he again denied any serious issues other than his anxiety. (*Id.* at 16-18). On January 16, Petitioner was referred for a psychiatric evaluation, but this evaluation was briefly delayed by a security issue in the facility. (*Id.* at 20). On January 17, Petitioner received this evaluation. (*Id.* at 21). Following the evaluation, Petitioner was referred for psychiatric treatment based on his anxiety. (*Id.*). That

same day, petitioner reported having a sore throat, cough, and congestion, and was provided with Tylenol and cough medicine. (*Id.* at 22-24).

On January 20, Petitioner reported having worsening anxiety, and was treated by a doctor who changed his anxiety medications to a different form of Vistaril and Clonidine. (*Id.* at 25-26). Petitioner was determined to suffer from both anxiety and depressive mood resulting from his detention and the recent death of his brother in Ecuador. (*Id.* at 28). Petitioner received a follow up with the psychiatrist on January 24, during which he reported limited results from his medication. (*Id.* at 30). The psychiatrist therefore discontinued his Vistaril, and replaced it with Zoloft and Remeron. (*Id.* at 31-33). Petitioner received another follow up on January 30, at which point his medications were again adjusted to include Zoloft, Mirtazapine, and Topomax. (*Id.* at 34-35). On February 20, Petitioner received another psychiatric follow-up, at which point Petitioner reported that his mental health had stabilized and that he wished to cease his medication voluntarily. (*Id.* at 43). Petitioner received another follow-up on March 13, during which he again reported that his mental state remained stable and improved. (*Id.* at 46).

On February 8, 2020, Petitioner submitted a sick call request for a toothache. (*Id.* at 37). Petitioner could not be seen that day by a physician due to his work schedule in the jail, but was seen on February 10, 2020, at which time Petitioner reported occasional tooth pain; he was instructed to more thoroughly rinse his mouth and was provided ibuprofen for pain. (*Id.* at 39-40). Petitioner was seen by a dentist the following day, and was scheduled for a filling on the affected tooth. (*Id.* at 41). Petitioner received this filling on March 17, 2020. (*Id.* at 48).

On March 27, 2020, Petitioner made a sick call for symptoms including a low-grade fever of 100.4 degrees, sore throat, diarrhea, and headache. (*Id.* at 51). Petitioner was determined to have a viral respiratory infection which may or may not have been the result of a COVID-19

infection, and was both moved to a quarantine housing unit and was provided with Tylenol, Tamiflu, Augmentin, and a N95 face mask. (*Id.* at 52-54). Petitioner also received a chest X-ray, which showed "[n]o definite mass, acute infiltrate, pneumothorax, or . . . pleural effusion." (*Id.* at 53). Petitioner was thereafter placed on daily monitoring while in quarantine and received daily temperature and health checks. (*Id.* at 54-59). Between March 28 and April 10, 2020, Petitioner reported no further medical issues, and daily checks showed no sign of fever or other symptoms. (*Id.*). On March 10, 2020, Petitioner received COVID-19 antibody testing which indicated that he had IgG positive antibodies, which indicate that he may[1] well have had COVID-19, recovered, and was now likely immune to the virus. (*Id.* at 59). Petitioner thereafter continued to receive monitoring between April 11 and April 17, during which time Petitioner had no fever or other symptoms of infection, and he was therefore returned to the general immigration detainee population. (*Id.* at 59-66). The facility continued to monitor Petitioner, however, and he remained free of symptoms or fever through April 29, 2020. (*Id.* at 66-71). Petitioner thereafter only appears to have reported to the medical department for serology testing which is not clearly related to his prior respiratory illness, and which does not appear to have resulted in any further treatment. (*Id.* at 71-73).

In support of his petition, Petitioner has submitted the report of a proposed expert medical witness. (Document 11 attached to ECF No. 1). According to the proposed expert, Petitioner "suffers from anxiety and depression [which have been] worsened by his detention," that he was seen for these issues by jail staff and prescribed medication. (*Id.* at 16). Petitioner admits that he

---

[1] The parties in this matter appear to agree that antibody testing is not a definitive and conclusive test for COVID-19 infection or immunity. Essex County uses these tests, however, not to make COVID-19 treatment decisions, but instead merely as a guide for housing, quarantine, and cohorting decisions. (*See* Document 1 attached to ECF No. 14).

voluntarily ceased this medication.  (Document 1 attached to ECF No. 19 at 2).  The proposed expert further contends that Petitioner's respiratory viral infection while detained in March 2020, which is discussed above, left him "acutely immune compromised"[2] to a potential COVID-19 infection.  (Document 11 attached to ECF No. 1).  No explanation is given as to how, why, or to what extent Petitioner's immune system has been compromised by his brief bout of respiratory illness.  The expert therefore opines that this respiratory infection places Petitioner at risk of developing a "serious COVID-19 infection" and that Petitioner's brief confinement in isolation as a result of the detention facility's COVID-19 protocols has "markedly worsened" his anxiety and depression.  (*Id.*).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).  As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction,

---

[2] The proposed expert bases this statement, that Petitioner's infection left him "acutely immune compromised" based solely on a statement which one of Petitioner's immigration attorneys states was made by either the Director of the facility or by a medical doctor who apparently referred Petitioner to ICE for consideration for possible release in a phone call between the officials and the attorney in early April 2020.  (Document 11 attached to ECF No. 1 at 16; Document 2 attached to ECF No. 1 at 3).  Neither Petitioner nor his proposed expert have provided any support for this conclusion that he is "immune compromised" other than the second-hand report of his immigration attorney, and nothing in his facility medical records suggests any such issue.

and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition, Petitioner argues that he should be released from immigration detention because he believes that he has been subjected to punitive conditions of confinement and has received insufficient medical care in light of a recent respiratory infection which may or may not have been a COVID-19 infection, his psychological issues, and the general threat posed by the COVID-19 epidemic. As this Court recently explained in *Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020), claims such as Petitioner's

> could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under [the circumstances], *see, e.g,*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens

6

throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's insufficient treatment or deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthma] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

. . . .

> . . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

Turning first to Petitioner's conditions of confinement, it is clear that the Government has a legitimate interest in securing aliens to ensure their compliance with removal proceedings. *See, e.g., Jennings*, 138 S. Ct. at 837, 843-46; *Zadvydas*, 533 U.S. at 693-95; *Demore v. Kim*, 538 U.S. 510, 521-22, 530 (2003). This interest is especially strong in cases such as this in which an immigration judge specifically found that Petitioner was both a flight risk and danger to the community. *See, e.g., Jennings*, 138 S. Ct. at 837, 843-46; *Zadvydas*, 533 U.S. at 693-95; *Demore v. Kim*, 538 U.S. 510, 521-22, 530 (2003); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 276, 278-81 (3d Cir. 2018). As Petitioner has not shown an express intent to punish on the part of the detention facility or its staff, he can therefore only succeed on his conditions of confinement claim by showing that the conditions applied to him in immigration detention are

arbitrary, purposeless, or excessive in relation to the Government's legitimate interest in detaining him.

Having reviewed the record of this matter, it is clear that the conditions to which Petitioner is subject are neither arbitrary, purposeless, nor excessive in relation to that interest. Since March 2020, the facility has taken considerable concrete steps to mitigate and alleviate the risk posed to detainees by the COVID-19 pandemic. Specifically, the facility, which is currently operating at approximately sixty-six percent capacity to ensure adequate space for social distancing, is following CDC guidelines for detention facilities in relation to testing and preventative action. (Document 1 attached to ECF No. 5 at 2-16). This includes screening each detainee for disabilities, health issues, and any signs of fever or respiratory illness as well as potential prior exposure to COVID-19 during intake screening; the isolation, testing, and treatment of those detainees who have symptoms of COVID-19; the transfer of those presenting severe symptoms to local hospitals for treatment; the placement of those who are asymptomatic but have been exposed to infected individuals in separate, cohorted units where they receive daily temperature and symptom monitoring for at least fourteen days; and COVID-19 testing for those who show known symptoms of the virus as well as wider COVID-19 antibody testing. (*Id.*). Additionally, the facility has increased the frequency of cleaning and sanitization; provided additional soap for detainee use in each housing area; has supplied both soap to detainees and hand sanitizer to staff and the medical unit, provided COVID-19 related education to inmates and staff; purchased and provided all detainees with masks, including N95 masks for those with sufficiently severe COVID-19 symptoms; limited or eliminated entry into the facility of non-essential personnel, volunteers, and visitors; implemented temperature screening for all staff and vendors entering the facility; and taken steps to limit the number of detainees eating or moving at any given time to provide for

social distancing during meals. (*Id.*). Taken in the aggregate, these actions clearly indicate that the facility has taken considerable steps to protect its detainee population, and as a result of these steps, the conditions under which Petitioner is confined are reasonably related to the Government's clear interest in detaining him pending his removal from the United States. These conditions are neither purposeless nor arbitrary – they are directly tailored to address the threat posed by COVID-19 and to protect detainees such as Petitioner from the virus to the extent reasonably possible in a civil detention setting. As it is clear that the conditions under which Petitioner is detained are neither purposeless or arbitrary and have instead been refined and tailored towards mitigating the threat of COVID-19, Petitioner has failed to show that the conditions under which he is housed are excessive, arbitrary, or purposeless, and his conditions of confinement claim thus fails to set forth a cognizable basis for habeas relief. *Jorge V.S.*, 2020 WL 1921936 at *2-4.

Petitioner's deliberate indifference to medical needs claim fares no better as a basis for habeas relief. Petitioner's medical records indicate that, throughout his early months at the facility, he was consistently treated for his distress, anxiety, and depression, including several attempts at modifying his medication which only ceased when Petitioner himself reported no further need for medication. Even after this time, Petitioner received an additional mental health evaluation to ensure no further need for medication of treatment. Likewise, Petitioner received treatment for both health and dental issues during these early months. Likewise, when Petitioner reported COVID-19-like symptoms, he was provided medication and placed in quarantine for his own protection, and received daily monitoring to ensure his health, ultimately resulting in his being released from quarantine. These records in the aggregate clearly show that Petitioner received

treatment for each issue he raised to the attention of the medical staff of the facility, and that the staff were therefore not deliberately indifferent to Petitioner's medical needs.[3]

In light of the steps taken by medical professionals at the facility to aid Petitioner when he reported issues, and the numerous steps taken to alleviate the potential threat of COVID-19, Petitioner has failed to show that medical staff acted with deliberate indifference. Petitioner's medical claim therefore fails to serve as a cognizable basis for habeas relief. *Jorge V.S.*, 2020 WL 1921936 at *2-4. As Petitioner has failed to show that he has either been exposed to punitive conditions or that the facility and its staff have been deliberately indifferent to his medical needs, Petitioner's habeas petition fails to state a valid basis for habeas relief, and his petition is therefore denied. Petitioner's motion seeking a temporary restraining order is in turn denied as moot in light of the denial of his petition. In light of the privacy interests Petitioner has in keeping his medical records from public view and the fact that immigration habeas matters are in any event normally not available for public access, and given the Government's decision not to oppose the motion, Petitioner's motion to seal his medical records (ECF No. 15) is granted.

---

[3] To the extent Petitioner contends that his being placed in quarantine worsened the anxiety and depression which he does not appear to have ever reported to medical staff after his medication was terminated at his request, Petitioner at best attempts to have his cake and eat it, too, by faulting staff both for failing to adequately protect him from COVID-19 and for quarantining him to protect him and other detainees from the threat of the virus. Petitioner cannot have it both ways, and he has in any event not shown any deliberate indifference by medical staff who appear to have treated the issues raised to their attention, including those psychiatric issues actually raised to the attention of the facility's staff.

## III. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE, his motion seeking a temporary restraining order (ECF No. 3) is DENIED as moot in light of the denial of his habeas petition, and his motion to seal his medical records (ECF No. 15) is GRANTED. An appropriate order follows.

Dated: July 16, 2020

*s/Susan D. Wigenton*
Hon. Susan D. Wigenton,
United States District Judge